1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
2                         ALEXANDRIA DIVISION


3    ------------------------------x
                                   :
4    UNITED STATES OF AMERICA,      : Criminal Action No.
                                   :
5               versus             : 1:16-CR-300
                                   :
6    DAMASO LOPEZ NUNEZ,            :
                                   :
7                   Defendant. : September 28, 2018
     ------------------------------x
8

9              The above-entitled Plea hearing was continued
     before the Honorable T.S. Ellis, III, United States District
     Judge.
10
                        A P P E A R A N C E S
11

     FOR THE GOVERNMENT:
12
                    JAMES TRUMP, ESQ.
13                  US Attorney's Office
                    2100 Jamieson Avenue
14                  Alexandria, VA 22314

15   FOR THE DEFENDANT:

16                  MATTHEW ALAN WARTEL, ESQ.
                    The Law Offices of Matthew A Wartel
17                  6315 Backlick Rd
                    Suite 308
18                  Springfield, VA 22150

19                  MANUEL J. RETURETA, ESQ.
                    Retureta & Wassem, PLLC
20                  300 New Jersey Avenue, NW
                    Suite 900
21                  Washington, D.C. 2001
          OFFICIAL UNITED STATES COURT REPORTER:
22
                    MS. TONIA M. HARRIS, RPR
23                  United States District Court
                    Eastern District of Virginia
24                  401 Courthouse Square
                    Ninth Floor
25                  Alexandria, VA 22314

─────────────────────United States v. Nunez─────────────────────

2

1                   **P R O C E E D I N G S**

2   (Court proceedings commenced at 12:32 p.m.)

3                THE COURT:  All right.  Good afternoon.

4                MR. RETURETA:  Good afternoon, Your Honor.

5                THE COURT:  All right.  You may call the next

6   matter.

7                THE DEPUTY CLERK:  United States versus Damaso Lopez

8   Nunez.  Criminal Case No. 1:16-CR-300.

9                Counsel, please not your appearance for the record.

10                THE COURT:  Who's here for the government?

11                MR. TRUMP:  Jim Trump, Your Honor.  Good afternoon.

12                THE COURT:  All right.  Mr. Trump.

13                And for the defendant.

14                MR. RETURETA:  Your Honor, good afternoon.  Manuel

15   Retureta on behalf of Mr. Lopez Nunez.  With me also is my

16   local counsel, Mr. Matthew Wartel.

17                THE COURT:  Yes.  Good afternoon, Mr. Wartel.  I

18   haven't seen you in a while.

19                MR. WARTEL:  Good to see you.

20                THE COURT:  And Mr. Lopez Nunez, good afternoon,

21   sir.

22                What name do you wish to be addressed by, Lopez, or

23   Lopez-Nunez, or Nunez?

24                THE DEFENDANT:  Lopez, sir.

25                THE COURT:  Lopez.  All right, sir, good afternoon.

─────────United States v. Nunez─────────

3

1   You may be seated.

2           THE DEFENDANT:  Good afternoon.  Thank you.

3           THE COURT:  All right.  Ms. Lefebvre, you're the

4   interpreter today?

5           THE INTERPRETER:  Yes, Your Honor.

6           THE COURT:  And I am thoroughly familiar with your

7   demonstrated proficiency as an interpreter in Spanish and

8   English.  You do so simultaneously as it is spoken, and in my

9   unprofessional view, quite correctly.  You may administer the

10  oath to her.  You may give me your name and your

11  qualifications for the record and then have her sworn.

12          INTERPRETER:  Anna Lefebvre, federally certified

13  Spanish certified court interpreter.

14          (Interpreter sworn.)

15          THE COURT:  All right.  Now, this was scheduled for

16  a status conference, but I am advised that the defendant now

17  wishes to plea to Count 1 of the indictment, charging him and

18  including engaging in a conspiracy to distribute five

19  kilograms or more of cocaine, intending or knowing that it

20  would be imported unlawfully into the United States.

21          MR. TRUMP:  That's correct, Your Honor.

22          MR. RETURETA:  That is correct, Your Honor.

23          THE COURT:  Now, let me ask, have you had an

24  adequate opportunity to review these plea papers and to have

25  them orally translated into Spanish for your client?

─────United States v. Nunez─────

4

1        MR. RETURETA:  We have had enough time, Your Honor,

2   yes.

3        THE COURT:  And I take it you have had it translated

4   for your client.

5        MR. RETURETA:  I have translated it personally to my

6   client.  I speak fluent Spanish and we have discussed it at

7   length.

8        THE COURT:  All right.  Good.

9        All right.  Mr. Lopez, come to the podium, please,

10  sir.  And the clerk may administer the oath to the defendant.

11        (Defendant sworn.)

12        THE COURT:  All right.  Mr. Lopez, do you

13  understand, sir, that you are now under oath and that if you

14  answer any of the Court's questions falsely, you may be

15  prosecuted for perjury or for making a false statement?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Mr. Lopez, there are two reasons why the

18  Court will ask you a series of questions, and it is important

19  that you understand what those two reasons are.

20        First, the Court will ask you a series of questions

21  to determine from your answers whether your plea of guilty to

22  this charge is a knowing and a voluntary plea.  That is that

23  you understand the nature of the charge to which you intend to

24  plead guilty.  That is engaging in a conspiracy to distribute

25  five kilograms or more of cocaine intending the cocaine would

─────────────United States v. Nunez─────────────

5

1   be unlawfully imported into the United States.  So that's the

2   first thing.  I want to be sure that you understand the nature

3   of the charge.

4           Secondly, I want to be sure that you understand all

5   the rights you'll be giving up by pleading guilty.

6           And third, I want to be sure that you understand all

7   the consequences, punishments that may result from your

8   pleading guilty to this charge.

9           And then, understanding all of that, I want to be

10  sure that you're going ahead and pleading guilty freely and

11  willingly and voluntarily because you're in fact guilty.

12          Now, the second reason the Court will ask you a

13  series of questions is to determine from your answers whether

14  there is a factual basis for your plea of guilty.  That is,

15  that you actually did what you're pleading guilty to, because

16  in this Court, Mr. Lopez, you may not plead guilty to

17  something you did not do.

18          Do you understand those is the two reasons the Court

19  will ask you a series of questions?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  State your full name.

22          THE DEFENDANT:  Damaso Lopez Nunez.

23          THE COURT:  What is your age?

24          THE DEFENDANT:  Fifty-two years and seven months.

25          THE COURT:  Where were you born?

───────United States v. Nunez───────

6

1        THE DEFENDANT:  Portaceli Eldorado, Culiacán,

2   Sinaloa, Mexico.

3        THE COURT:  Did you attend school there?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  What is the highest grade in school that

6   you completed?

7        THE DEFENDANT:  Third year college.  Law school.  A

8   bachelor in law.

9        THE COURT:  Did you graduate then from grammar

10  school and high school?

11       THE DEFENDANT:  Yes.

12       THE COURT:  Do you read and write Spanish?

13       THE DEFENDANT:  Yes, sir.

14       THE COURT:  Do you speak English?

15       THE DEFENDANT:  Very little, just barely.

16       THE COURT:  Do you read and write English?

17       THE DEFENDANT:  No.

18       THE COURT:  What jobs did you hold in Mexico, apart

19  from drug trafficking?

20       THE DEFENDANT:  I worked at the attorney general's

21  office in Sinaloa.

22       THE COURT:  All right.  What were you doing?

23       (Spoken in Spanish.)

24       THE DEFENDANT:  I was a prosecutor.  Like a

25  prosecutor.

─────────────────United States v. Nunez─────────────────

7

1          THE COURT:  And how long did you serve as a

2   prosecutor?

3          THE DEFENDANT:  Three years.

4          THE COURT:  Have you ever been treated for mental

5   illness or addiction to narcotic drugs of any kind?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Ever been treated for alcohol abuse?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Are you currently taking any drug or

10  medication, whether prescribed or otherwise?

11         THE DEFENDANT:  One pill a week.  It's because I had

12  a bacteria in my nail, because the showers were dirty.

13         THE COURT:  Any other medicine other than what you

14  have described for your nail?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  Does that medicine impair your abilities

17  to see, hear, or understand things?

18         THE DEFENDANT:  In no way.

19         THE COURT:  Is there any reason today why you would

20  be unable to understand what's happening in this proceeding

21  today?

22         THE DEFENDANT:  No, sir.  I understand everything

23  very well.

24         THE COURT:  Have you been furnished with a copy of

25  the indictment, the grand jury's charges against you and had

─────────United States v. Nunez─────────

8

1    it orally translated for you into Spanish?

2              THE DEFENDANT:  Yes, sir, my attorney did it.

3              THE COURT:  And have you been able to discuss the

4    charges with your attorney in Spanish?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  So you give him a passing grade for his

7    Spanish?

8              Does he understand well? (Spoken in Spanish.)

9              THE DEFENDANT:  Yes, sir.

10             (Interpreter's translation.)

11             THE COURT:  I speak Spanish too. (Spoken in

12   Spanish.)

13             I was born in Colombia. (Spoken in Spanish.)

14             (Interpreter's translation.)

15             MR. RETURETA:  If you allow me -- (Spoken in

16   Spanish.)

17             THE COURT: (Speaking in Spanish.)

18             (Interpreter's translation.)

19             MR. RETURETA:  I say I speak Spanish, but in truth I

20   speak Cuban. (Spoken in Spanish.)

21             THE COURT:  Mr. Trump, there's a long story that

22   goes with that.

23             MR. TRUMP:  I understand English.

24             THE COURT:  In some parts of --

25             (Discussion off the record.)

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
EASTERN DISTRICT OF VIRGINIA

─────────────────United States v. Nunez─────────────────
9

1              THE COURT:  All right.  Now, enough, proceed.

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Now, do you understand that Count 1, the

4   count to which I'm advised you intend to plead guilty,

5   provides as follows:

6              That from in or around 2003 and continuing

7   thereafter up to and including the date of the indictment,

8   which is December of 2016, within the jurisdiction of the

9   United States, and the offense begun and committed outside the

10  jurisdiction of a particular state or district, including

11  Mexico, Colombia, Costa Rica, El Salvador, Guatemala, Panama,

12  and elsewhere, you, also known as, El Licenciado, knowingly

13  and intentionally combined, conspired, confederated and agreed

14  with each other and with others, known and unknown,

15  intentionally, knowingly to distribute five kilograms or more

16  of the substance containing a detectable amount of cocaine, a

17  Schedule II controlled substance, intending and knowing that

18  such substance would be unlawfully imported in the United

19  States in violation of Title 21 U.S. Code Section 959(a) and

20  960 and 963.

21             So do you understand, Mr. Lopez --

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  -- the charge which you intend to plead

24  guilty in Count 1 of the indictment, is a charge of your

25  engaging in a conspiracy to distribute five kilograms or more

──────United States v. Nunez──────

10

1   of cocaine intending or knowing that the cocaine would be

2   unlawfully imported in the United States?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Mr. Lopez, it's a serious felony offense

5   and it's important that you understand all the punishments or

6   consequences that may result from your pleading guilty to that

7   charge.  So I'm going to list those for you now.

8            First, you could be sentenced to a term of

9   imprisonment.  There's a minimum term of ten years.  Ten years

10  in prison without parole is the least that could happen to you

11  unless there is a motion for a downward departure in your

12  guidelines or reduction of your sentence based on any

13  cooperation that you may provide.  Or based --

14            I take it the safety valve would have no

15  application?

16            MR. TRUMP:  That's correct, Your Honor.

17            THE COURT:  So the mandatory minimum term of

18  imprisonment is ten years without parole.  The maximum term of

19  imprisonment is life in prison without parole.  There's a

20  maximum fine of $10 million.  You'll be required to forfeit

21  any assets used to facilitate the drug trafficking activities

22  or any assets traceable to the profits or proceeds of the drug

23  trafficking activities.  And then on release of confinement,

24  you'll be required to serve a minimum supervised release term

25  of five years and a maximum supervised release term of life.

──────────United States v. Nunez──────────

11

1   And if you were to violate any of the conditions of that

2   release, you could be returned to prison for the full

3   supervised release term.

4           Now, do you understand, Mr. Lopez, that all of those

5   that I've listed are consequences or possible consequences of

6   your plea of guilty to this count?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Now, Mr. Lopez, it appears you have a

9   plea agreement and a Statement of Facts that you have signed.

10  Were those documents orally translated for you into Spanish?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And did you have an adequate opportunity

13  to discuss the plea agreement and the Statement of Facts with

14  your attorney?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And are you fully satisfied with the

17  advice and counsel Mr. Retureta has provided you in this case?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  I'm going to have the court security

20  officer now hand you what appear to be your plea agreement and

21  Statement of Facts.  I want you to look at those documents and

22  tell me whether they are your plea agreement and Statement of

23  Facts and you may -- and you may have as much of that

24  translated into Spanish as you need in order to tell me

25  whether it's your plea agreement and Statement of Facts.

─────────United States v. Nunez─────────

12

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Is that your plea agreement, Mr. Lopez?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And is that your signature that appears

5    at the end of that document?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And does your signature appearing at the

8    end of the plea agreement signify that you have had the plea

9    agreement orally translated for you into Spanish and that you

10   understand and agree to its terms?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Is that your Statement of Facts, Mr.

13   Lopez?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And is that your signature that appears

16   at the end of that document?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  And does your signature appearing at the

19   end of the Statement of Facts signify that you have had the

20   Statement of Facts orally translated for you into Spanish and

21   that you agree that it is true and accurate in all respects?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Return those documents to the bench,

24   please.

25         Now, Mr. Lopez, I'm going to summarize the essential

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

EASTERN DISTRICT OF VIRGINIA

─────United States v. Nunez─────

13

1  terms of your plea agreement.  Pay careful attention to my

2  summary because at the conclusion, I will ask you whether

3  those are the terms of your plea agreement with the government

4  as you understand it.

5          Under the plea agreement, you agree to plead guilty

6  to Count 1 of the indictment charging you were conspiring to

7  distribute five kilograms or more of cocaine intending or

8  knowing -- and knowing that such substance would be unlawfully

9  -- will be unlawfully imported into the United States.

10          And then the plea agreement recites, as I did a few

11  moments ago, what the maximum penalties are for that offense.

12  There's a mandatory minimum term of imprisonment of ten years.

13  There's a maximum term of imprisonment of life in prison.

14  There's a maximum fine of up to $10 million.  Forfeiture of

15  assets is required, that is, any drug-related assets.  That

16  means any assets used to facilitate the drug trafficking

17  activities or any assets traceable to the profits or proceeds

18  of your drug trafficking.

19          And then, the -- the plea agreement also notes that

20  you'll be required to pay $100 special assessment, which

21  you've agreed to pay prior to sentencing.  You've agreed to do

22  that in the plea agreement.

23          And then, the plea agreement also recites that upon

24  release from any confinement you'll be required to serve at

25  least five years of supervised release and a maximum of life

──────United States v. Nunez──────

14

1   of supervised release.  And if within the course of the

2   supervised release you were to violate any of the conditions

3   of supervised release, you could be returned to prison for the

4   full supervised release term.

5          The plea agreement goes on, Mr. Lopez, and provides

6   that you are representing that you're pleading guilty because

7   you are in fact guilty of the charged offense.  That you had

8   met the facts set forth in the Statement of Facts filed with

9   the plea agreement.  You agree that those facts establish your

10  guilt of the charged offense beyond a reasonable doubt and you

11  understand that the Statement of Facts will be the basis of

12  the predicate for the calculation of your advisory sentencing

13  guideline's range.

14         The plea agreement continues, Mr. Lopez, and

15  provides that you're representing that you're satisfied that

16  Mr. Retureta has rendered effective assistance to you in this

17  case and Mr. Wartel as well.  I'm sure he's been involved.

18  That is, that you're satisfied that your attorneys has

19  rendered effective assistance to you in this case, and that

20  you understand that -- that by entering into the plea

21  agreement that you'll be giving up your right to a jury trial.

22  And then the plea agreement recites, in very brief shorthand

23  fashion, what those rights are.  I will review those with you

24  in greater detail in a few minutes.

25         The plea agreement goes on to provide that you

──────Tonia M. Harris OCR-USDC/EDVA 703-646-1438──────

EASTERN DISTRICT OF VIRGINIA

United States v. Nunez

15

1   understand that the Court has the jurisdiction, that is, the

2   power to impose any sentence on you up to the statutory

3   maximum, which is life in prison, and that your sentence

4   hasn't yet been determined.

5          It's uncertain, at this time, what sentence you will

6   actually receive.  Any estimate you've received from your

7   counsel, your attorney, those are merely estimates.  They are

8   not promises, they are not assurances.  The same with the

9   government.  The government specifically notes that it makes

10   no promise or representation to you concerning what sentence

11   you will actually receive.  And the plea agreement also notes

12   that you'll be sentenced under the law which provides that the

13   sentencing guidelines are now advisory, not mandatory as they

14   once were.  And that the Court has the authority to impose any

15   sentence above or below the sentencing guidelines range with

16   the exception that it cannot sentence you to a period of time

17   less than ten years.  That's the mandatory minimum.

18          Now, you and the government have entered into an

19   agreement to make recommendations to the Court as to how some

20   of the guidelines might apply to your case.  In essence, you

21   and the government have agreed that your base offense level

22   should be 38.  That there should be a two-level enhancement

23   for possession of a firearm, a two-level enhancement for use

24   of violence, a two-level enhancement for the use of

25   noncommercial aircraft and submersible vessels, a two-level

─────United States v. Nunez─────

16

1   increase for bribery, two-level increase for an aggravating

2   role factor, and a four-level increase for that as well.  So

3   that you're adjusted offense level would be 52.

4           Your acceptance of responsibility, if you earn it,

5   would be two.  And the government has agreed to file a motion

6   for an additional level for acceptance of responsibility owing

7   to your timely decision to enter a plea so that your guideline

8   offense level total would be 49.  And that's a guideline range

9   of life.

10          The plea agreement -- and the recommendations that

11  you've agreed to make to this Court, you and the government,

12  are not binding on the Court.  I could reach a different

13  result.  And there may be other disagreements as to the

14  applicability or inapplicability of other sections of the

15  guidelines.  The government has agreed to recommend that the

16  Court sentence you to life.  The government and the defendant

17  understand that the Court isn't bound by this agreement.

18          The plea agreement continues and provides that you

19  understand that you have the right to appeal any sentence --

20  ordinarily you would have a right to appeal any sentence

21  imposed on you, but in your plea agreement you're waiving that

22  right, you're giving it up on any ground.

23          The plea agreement also notes that any monetary

24  penalty imposed on you would be due and payable immediately.

25  That is -- and if not paid immediately, the government could

─────United States v. Nunez─────

17

1   proceed to obtain a judgment and execute on the judgment

2   immediately.

3          Also, you have agreed to provide your financial

4   information to the government, if requested; or to the

5   probation officer, if requested; and to participate in a

6   presentence debtor's examination or to complete a financial

7   statement under penalty of perjury.

8          And the plea agreement also notes that if you're

9   incarcerated, you've agreed to participate voluntarily in the

10  Bureau of Prisons Inmate Financial Responsibility Program

11  regardless of whether the Court orders it.

12         The plea agreement continues and provides that in

13  return for your plea, the government has agreed not to

14  prosecute you further in the Eastern District of Virginia for

15  the specific conduct described in the indictment or the

16  Statement of Facts.

17         The plea agreement continues and provides that you

18  understand that forfeiture of assets is part of the sentence

19  that must be imposed in this case and you've agreed to forfeit

20  all interests you have in any drug-related assets that you own

21  or over which you've exercised any control directly or

22  indirectly, as well as any property that's traceable to, or

23  derived from, or fungible with, or a substitute for property

24  that constitutes the proceeds of your drug trafficking

25  activities.

—United States v. Nunez—

18

1           And you understand that if the proceeds of the

2    offense are not available and the government -- or I beg your

3    pardon -- the Court must enter a forfeiture, money judgment in

4    the amount of the proceeds.  And you've agreed to waive all

5    interests you have in any administrative or judicial

6    forfeiture proceeding whether civil, state, or federal.  You

7    agree to the entries of orders of forfeiture for such a

8    property.  You've agreed to waive any further review, you've

9    agreed to forfeiture, that is, you've agreed to waive all

10   constitutional statutory challenges to forfeiture carried out

11   in accordance with this plea agreement.

12           You've also agreed to take all steps, as requested

13   by the government, to pass clear title to forfeitable assets

14   to the government and to testify truthfully in any judicial

15   forfeiture proceedings.

16           You've also agreed in the plea agreement that on

17   request of the government you've agreed to identify all the

18   assets over which you had any interest in or owned or

19   exercised any control over directly or indirectly within the

20   past ten years.  You've agreed to take all steps necessary by

21   the government to obtain from other parties such as banks, by

22   any lawful means, any records of assets owned by you at any

23   time.

24           And you've agreed to undergo a polygraph

25   examination.  That's a lie detector test that the government

─────────────────────United States v. Nunez─────────────

19

1    may choose to administer to you concerning such assets.  And

2    you've also agreed to provide a consent of the release of your

3    tax returns for the last five years.

4            The plea agreement also notes that you understand

5    that pleading guilty may have consequences with respect to

6    your immigration status.

7            But his immigration status is not legal, is it

8    counsel?

9            MR. RETURETA:  No, Your Honor.

10           THE COURT:  I mean he wasn't brought to this country

11   willingly.

12           MR. RETURETA:  He wasn't.  He was extradited.

13           THE COURT:  He was extradited.  Well, what the plea

14   notes is, as a result of your plea, you're very likely to be

15   removed or deported from this country back to your country of

16   origin upon completion of any prison sentence.

17           Now, the plea agreement further provides --

18           (A pause in the proceeding. )

19           THE COURT:  Now, continuing the summary of the plea

20   agreement.  If you or the government allege that there has

21   been a breach of the plea agreement, then the Court will hold

22   a hearing and the party alleging the breach will have the

23   burden of proving the breach by a preponderance of the

24   evidence.  And if the Court determines that you are in breach

25   of the agreement and the government seeks to be released from

─────────────────────────────────────────────────────────

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

─────United States v. Nunez─────

20

1    its obligations under the plea agreement, then the government

2    will be free to prosecute you for any offense it knows about,

3    including what's in the indictment.  And in doing so, it would

4    be free to be used against you all of the information and your

5    statement in the Statement of Facts, and you would not be able

6    to rely on any statute, rule, or constitutional provision to

7    suppress the use of that information against you.

8            And finally, the plea agreement provides that it is

9    the full and complete agreement between you and the government

10   and that there aren't any secret or side arrangements.

11           Now, Mr. Lopez, are those the terms of your plea

12   agreement with the government as you understand it?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Are all of the understandings that you

15   have, concerning your plea agreement, contained in the plea

16   agreement?  That is, are all of the understandings you have

17   with the government concerning your plea of guilty contained

18   in the plea agreement?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Has anyone made any other or different

21   kind of promise or assurance to you -- or assurance to you of

22   any kind in connection with your plea of guilty?

23           THE DEFENDANT:  No, sir.

24           THE COURT:  Has anyone tried to force you or to

25   pressure you or to coerce you in any way to plead guilty in

─────United States v. Nunez─────

21

1    this case?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  Are you pleading guilty then freely and

4    willingly and voluntarily because you are in fact guilty?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Mr. Lopez, you'll be sentenced under the

7    law which provides that the sentencing guidelines, which once

8    were mandatory, are now only advisory, have you and your

9    counsel discussed how the sentencing guidelines might apply to

10   your case?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Now, you and the government have entered

13   into an agreement to make recommendations to the Court as to

14   how some of the guidelines might apply to your case.

15             Do you understand that that agreement binds you and

16   it binds the government, but it does not bind the Court?  I

17   can reach a different result.

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And do you understand that the Court

20   will not be able to determine what advisory guideline range

21   applies to your case until after a presentence report has been

22   prepared and you and your counsel have had an opportunity to

23   review it and to call to the Court's attention any objections

24   or corrections you have to the facts, conclusions, or

25   calculations contained in the report?

———United States v. Nunez———

22

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  And you also understand that if the

3    guideline range, the Court ultimately determines that applies

4    to you, if that's below ten years, the Court still must impose

5    a mandatory minimum term of imprisonment of ten years unless

6    there is an exception?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  And do you understand that if the

9    guideline range is above ten years, the Court still has the

10   authority to impose a sentence that is below the guideline

11   range, but never below ten years or above the guideline range?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  You also understand that if you're

14   sentenced to a period of incarceration, you will not be

15   paroled, there is no parole in the federal system, it has been

16   abolished?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  And do you also understand that while

19   you would ordinarily have the right to appeal your sentence in

20   your plea agreement, you've waived that right, you've given it

21   up on any ground?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  And do you understand, Mr. Lopez, that

24   if the sentence you ultimately receive is more severe than the

25   sentence you now expect, as you stand here this afternoon, you

──────United States v. Nunez──────

23

1  will still be bound by your plea and your plea agreement and

2  you will have no right to withdraw?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Mr. Lopez, you have an absolute right to

5  plead not guilty and to persist in that plea and if you do so

6  you would have the right to a trial by jury.

7          Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now, incident to your right to trial by

10 jury, Mr. Lopez, you have all of the following rights --

11         This is where I explain to you all the rights you

12 would have if you persisted in a plea of not guilty, as you

13 have an absolute right to do, and requested a jury trial.  And

14 I'm going to list those for you now so you'll understand what

15 it is you're giving up by pleading guilty.

16         First, you would have the assistance of your counsel

17 throughout all phases of the proceedings against you in this

18 case.

19         Next, you would have the right to see and hear all

20 witnesses and all evidence against you and to have those

21 witnesses and that evidence cross-examined on your behalf.  In

22 other words, you cannot be prosecuted on the basis of secret

23 testimony or secret evidence.  You have the right to see it

24 all, to confront it all, and to have it all cross-examined on

25 your behalf.

─────United States v. Nunez─────

24

1        Next, you would have the right -- you would have the

2  right to testify before the jury or to remain silent before a

3  jury.  And the decision whether you testify or remain silent

4  is a decision you must make, not your attorney.

5        Now, you can receive advice from them, but

6  ultimately you must be the person who decides whether you

7  remain silent or to testify.

8        Now, if you elect to remain silent, the Court will

9  instruct the jury that when the jury retires to deliberate on

10  its verdict, the jury cannot even discuss the fact that you

11  have not testified and the jury cannot draw any inference from

12  your silence.

13        Next, you would be entitled not to be found guilty

14  by the jury unless all 12 members of the jury are unanimous in

15  concluding that the government has proved beyond a reasonable

16  doubt each and every element of the offense against you in

17  Count 1 of the indictment.

18        And finally, you would be entitled to the issuance

19  of compulsory process of subpoenas to compel the attendance of

20  witnesses and evidence to be presented in your behalf.

21        Now, Mr. Lopez, do you understand that all of the --

22  of -- all of those are rights you would have if you persist in

23  a plea of not guilty as you have an absolute right to do?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  And do you understand that by pleading

─────────────United States v. Nunez─────────────

1    guilty you give up all those rights and there will be no trial

2    at all?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Do you also understand, Mr. Lopez, that

5    if you persist in a plea of not guilty, as you have an

6    absolute right to do, the government will be required to prove

7    beyond a reasonable doubt each and every element of the

8    offense charged against you in this case.

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  What that means, Mr. Lopez, is this:  If

11   you persist in a plea of not guilty, as you have an absolute

12   right to do, you can compel the government to prove beyond a

13   reasonable doubt all of the following:

14           First, that the alleged conspiracy existed from in

15   and around 2003 and continued up to December 2016.

16           Now, the government doesn't have to prove that the

17   alleged conspiracy existed between those two precise dates,

18   but it does have to prove that the alleged conspiracy existed

19   between two dates reasonably near those dates.

20           Next, the government would have to prove the

21   existence of a conspiracy.

22           Now, to prove the existence of a conspiracy, the

23   government does not have to prove that you and others had

24   written agreements about what you were going to do or even

25   detailed oral agreements about what you were going to do.

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─
EASTERN DISTRICT OF VIRGINIA

─────United States v. Nunez─────

26

1          But what the government must prove, beyond a

2    reasonable doubt, is that you and at least one other person

3    has some kind of understanding or arrangement, the purpose

4    of -- the purpose of which was to distribute five kilograms or

5    more of cocaine knowing that it would be unlawfully imported

6    into the United States.

7          And next, the government would have to prove that

8    you knowingly and intentionally joined this conspiracy.  That

9    you didn't do this by accident, by inadvertence or by mistake,

10   but you did it deliberately knowing what you were doing, that

11   is, entering into a conspiracy to distribute cocaine that

12   would be imported into the United States.

13         Next, the government would have to prove that you

14   intended to distribute and import into the United States five

15   kilograms or more of cocaine, a Schedule II controlled

16   substance.  Cocaine is a Schedule II controlled substance.  So

17   the government would have to prove that you knowingly joined

18   that conspiracy.

19         So do you understand that the government would have

20   to prove all of that beyond a reasonable doubt if you persist

21   in a plea of not guilty?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And do you understand that by pleading

24   guilty you give up the right to compel the government to prove

25   all of that beyond a reasonable doubt?

──────United States v. Nunez──────

27

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you also understand that the

3   government would have to prove by a lesser standard, by a

4   preponderance of the evidence that the offense to which you're

5   pleading guilty was permitted largely, if not entirely,

6   outside the United States, and that you were first brought to

7   this country in the Eastern District of Virginia.  The

8   government would have to prove all of that by the

9   preponderance of the evidence.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And do you understand that by pleading

13   guilty you give up the right to compel the government to prove

14   that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Did you do what's charged in Count 1 of

17   the conspiracy, Mr. Lopez, that is, did you conspire with

18   others to distribute five kilograms or more of cocaine

19   intending and knowing that that cocaine would be unlawfully

20   imported into the United States?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Tell me in your own words what you did?

23          (Defendant speaking in Spanish.)

24          THE COURT: (Speaking Spanish.)  Louder, please.

25          THE DEFENDANT:  Your Honor, I was a member of the

─────United States v. Nunez─────

28

1   Sinaloa cartel for over 15 years.  The Sinaloa cartel was

2   based in the state of Sinaloa, Mexico.  I rose to become a

3   leader within this cartel and responsible for the importation

4   from Mexico into the United States of cocaine and other

5   illegal drugs.

6           The cartels importation and subsequent sale of these

7   drugs resulted in profits worth billions of dollars.

8           THE COURT:  All right.  And did you do this, Mr.

9   Lopez, roughly beginning in 2003 and continuing through the

10  end of 2016?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  Mr. Lopez, you may be

13  seated, sir.

14          I'm going to have Mr. Trump now tell the Court what

15  the Government were to prove were this matter to go to trial.

16          Mr. Trump, what would the Government prove by

17  admissible and probative evidence if this matter were to go to

18  trial?

19          MR. TRUMP:  Your Honor, the United States would have

20  proven the following facts beyond a reasonable doubt:

21          Beginning in or about 2001 and continuing until on

22  or about May 2, 2017 in Mexico and elsewhere, the defendant

23  was part of a conspiracy, the object of which was to

24  distribute five kilograms or more of cocaine intending and

25  knowing that the cocaine would be unlawfully imported into the

──────United States v. Nunez──────

29

1   United States, in violation of Title 21, United States Code

2   Section 959(a), 960(b), and 963.

3          Specifically, Your Honor, between 2001 until May

4   2017 arrest by Mexican authorities, the defendant, along with

5   his son, Damaso Lopez Serrano, rose to become a senior leader

6   of a significant faction of the Sinaloa cartel.

7          Under the defendant's leadership, this faction's

8   activities were critical to the success of the expansive

9   criminal objectives of the Sinaloa cartel and were responsible

10  for the distribution of tonnage quantities of cocaine --

11  excuse me -- tonnage quantities of narcotics including

12  cocaine, methamphetamine, heroin, and marijuana for illegal

13  importation into the United States.

14         The defendant's factions consisted of hundreds of

15  men who ultimately reported to the defendant.  The defendant

16  and the Sinaloa cartel obtained tonnage quantities of cocaine

17  from central and South American suppliers.  The defendant

18  oversaw the finances of these massive cocaine shipments, which

19  were transported to Mexico via air, land, and sea.

20         Once the cocaine reached Mexico, the defendant and

21  other Sinaloa cartel members arranged for its transportation

22  to key points in Mexico including Culiacán, Sinaloa, Mexico.

23         The defendant controlled various cities and regions

24  within Mexico for the Sinaloa cartel.

25         Culiacán was the central hub to which the defendant

─────────United States v. Nunez─────────

30

1    and the Sinaloa cartel distributed tonnage quantities of drugs

2    and tonnage importation into the United States.

3           This was also the central point for the collection

4    of billions of dollars in drug trafficking proceeds from the

5    United States.

6           The Sinaloa cartel, and specifically members of the

7    defendant's faction of the cartel, also employed sicarits or

8    hit men who carried out numerous acts of violence, including

9    murders, kidnapping, tortures, and a forceful collection of

10   drug debts at the defendant's direction and the direction of

11   other senior members of the organization.

12          The defendant and other members of the Sinaloa

13   cartel, under his direction, were also responsible for

14   coordinating and making bribery payments to corrupt public

15   officials to further a number of the Sinaloa cartels, elicit

16   aims and activities.

17          These bribes funded activities that included, but

18   were not limited to:  Securing the uninhibited passage of

19   narcotics throughout Mexico, securing the release of or

20   creating impediments to the extradition of incarcerated

21   associates, the installation of governmental appointees

22   sympathetic to the Sinaloa cartel and the government positions

23   vital to the cartel's interests, among others.

24          As part of his entry into drug trafficking and while

25   working as a senior government official in Mexico's Puente

─────────────────United States v. Nunez─────────────────

31

1   Grande prison, the defendant directly facilitated the elicit

2   communications of Joaquín Guzman Loera, the principal leader

3   of the Sinaloa cartel while Guzman was incarcerated at the

4   facility.

5          Following Guzman's escape in the prison in 2001, the

6   defendant began working for the Sinaloa cartel.  The defendant

7   eventually became a senior leader within the cartel working

8   closely with Guzman.

9          During and in furtherance of the conspiracy, the

10  defendant and other co-conspirators utilized submarines,

11  airplanes, and other methods of transportation to move cocaine

12  from South America to Mexico and ultimately into the United

13  States.

14         During the defendant's involvement in the

15  conspiracy, law enforcement in several different countries

16  received tonnage quantities of cocaine belonging to the

17  Sinaloa cartel.

18         The defendant was aware that the cocaine and other

19  drugs acquired, transported, stored, and distributed by

20  members of his faction and the larger Sinaloa cartel were

21  intended for illegal importation into the United States for

22  further distribution.

23         The total amount of cocaine involved in this

24  conspiracy for which the defendant is directly accountable is

25  far in excess of 450 kilograms.  The defendant coordinated the

─────────────────── United States v. Nunez ───────────────────

32

1   acquisition, transportation, storage, and subsequent

2   distribution of numerous multi-tonnage quantities of cocaine

3   from 2001 to 2017.

4           The defendant agrees that his participation in the

5   charged conspiracy and the acts described in this Statement of

6   Facts in all respects was knowing, intentional, and willful,

7   reflected in intention and deliberation to do something the

8   law forbids, or not in any way the product of any accident,

9   mistake, law or fact, duress, entrapment or reliance on public

10  authority.

11          Thank you, Judge.

12          THE COURT:  Thank you.  All right.  Return to the

13  podium, Mr. Lopez.

14          Was that recitation of facts by Mr. Trump, the

15  prosecutor, true and accurate in all respects?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  Mr. Lopez, how do you now

18  plea to the charge against you in Count 1 of the indictment,

19  that is the count charging you with engaging in a conspiracy

20  to distribute five kilograms or more of cocaine intending or

21  knowing that the cocaine would be unlawfully imported into the

22  United States?

23          Do you plead guilty or not guilty?

24          THE DEFENDANT:  Guilty, Your Honor.

25          THE COURT:  The Court in the case of the Damaso

────────United States v. Nunez────────

33

1  Lopez Nunez finds that the defendant is fully competent and

2  capable of entering an informed plea. That your plea of

3  guilty is a knowing and a voluntary plea and that it is

4  supported by an independent basis and fact containing each of

5  the elements of the offense charged against you in Count 1 of

6  the indictment. Accordingly, the Court accepts your plea and

7  it adjudges you now guilty of that offense.

8          Mr. Lopez, the Court will order the preparation of a

9  presentence investigation report. This is a vitally important

10 document, because it's a document on which the Court will

11 chiefly rely in imposing an appropriate sentence. So you need

12 to pay careful attention to the preparation of this document.

13 And indeed, you have a role to play in this preparation. You

14 will be asked by a probation officer to provide information so

15 that the report can be prepared. You'll be asked, for

16 example, to provide information about your family, your

17 education, your work experience, your version of the offense

18 conduct, your health and financial conditions, your version of

19 the offense conduct, your criminal history, if any; and indeed

20 anything that may be material in any way to the Court's

21 sentencing decision. And you may have your counsel with you

22 when you provide that information.

23         And, of course, whenever you have any contact with

24 the government or anything of that sort, a translator, an

25 interpreter will be provided so that you will understand

─────────────United States v. Nunez─────────────

34

1   everything and be able to be understood.

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Now, at the time of sentencing, Mr.

4   Lopez, you will have the right to address the Court and to say

5   anything at all you wish to the Court by way of extenuation,

6   mitigation, or indeed anything you think the Court should

7   know.  You won't be required to address the Court, but you'll

8   have the opportunity to do so if you wish to.  And, of course,

9   your counsel will also be afforded the opportunity to address

10  the Court on your behalf.

11           I will set sentencing for --

12           MR. TRUMP:  Your Honor, may we approach on the set

13  of the sentencing date?

14           THE COURT:  Yes.

15           (Sidebar held.) (Open court.)

16           THE COURT:  All right.  I have set sentencing for

17  November 30th at 9 a.m.

18           Anything further to be accomplished in this matter

19  today on behalf of the government?

20           MR. TRUMP:  No, Your Honor.

21           THE COURT:  On behalf of the defendant?

22           MR. RETURETA:  No, Your Honor.

23           THE COURT:  All right.  I thank counsel for your

24  cooperation.  What's the next matter?

25           **(Proceedings adjourned at 2:15 p.m.)**

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

EASTERN DISTRICT OF VIRGINIA

1                   CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for

4   the Eastern District of Virginia, do hereby certify that I

5   reported by machine shorthand, in my official capacity, the

6   proceedings had and testimony adduced upon the Plea hearing

7   in the case of the **UNITED STATES OF AMERICA versus DAMASO**

8   **LOPEZ NUNEZ**, Criminal Action No. 1:16-CR-300, in said court

9   on the 28th day of September, 2018.

10         I further certify that the foregoing 35 pages

11  constitute the official transcript of said proceedings, as

12  taken from my machine shorthand notes, my computer realtime

13  display, together with the backup tape recording of said

14  proceedings to the best of my ability.

15         In witness whereof, I have hereto subscribed my

16  name, this December 5, 2019.

17

18

19

20

21  _____

22  Tonia M. Harris, RPR
    Official Court Reporter

23

24

25

                                                          35